UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BARBARA F. HEATH,                    )
                                     ) No. CV-06-0070-MWL
          Plaintiff,                 )
                                     ) ORDER GRANTING DEFENDANT'S
v.                                   ) MOTION FOR SUMMARY JUDGMENT
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of Social               )
Security,                            )
                                     )
          Defendant.                 )
                                     )

BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on September 11, 2006.
(Ct. Rec. 12, 15).  Plaintiff Barbara Heath ("Plaintiff") filed a
reply brief on August 24, 2006.  (Ct. Rec. 17).  Attorney Maureen
Rosette represents Plaintiff; Special Assistant United States
Attorney Jeffrey H. Baird represents the Commissioner of Social
Security ("Commissioner").  The parties have consented to proceed
before a magistrate judge.  (Ct. Rec. 7).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 15)
and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12).

**JURISDICTION**

On February 7, 2003, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability since July 20, 1998,[1] due to chronic fatigue, fibromyalgia, sleeping problems, arthritis in her lower back, carpal tunnel and soft tissue damage in her arms.  (Administrative Record ("AR") 65-72, 80).  Plaintiff's application for DIB was denied initially and on reconsideration.

On June 15, 2005, Plaintiff appeared before Administrative Law Judge ("ALJ") Mary B. Reed, at which time testimony was taken from Plaintiff and vocational expert Tom Moreland.  (AR 341-393). On August 22, 2005, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 17-36).  The Appeals Council denied a request for review on February 17, 2006.  (AR 6-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on March 3, 2006.  (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 54 years old on the date of the ALJ's decision, has more than a high school education and has past work experience as a hospital ///

---

[1] Plaintiff's date last insured was September 30, 2003.  (AR 73). Plaintiff thus had the burden of demonstrating she was disabled on or prior to September 30, 2003.  (AR 18, 344).

admitting clerk, general clerk, cashier II, collections clerk and telephone receptionist. (AR 17-18).

Plaintiff testified at the administrative hearing held on June 15, 2005, that she stopped working in July of 1998 following carpal tunnel surgery on her right hand. (AR 349). Plaintiff indicated that, following this surgery, she had a lot of pain and numbness in her arm that continued to bother her at present. (AR 350). She stated that she had numbness which prevented her from grasping well, she could not write for long periods and, if she held a book, quilted or used scissors, her hand would go to sleep. (AR 350, 365-367). Plaintiff testified that she could work on a computer, continuously typing or using a mouse, for only about 10 minutes at a time. (AR 351).

Plaintiff stated that she was informed by a doctor in the late 1980's that she has fibromyalgia which caused muscle and joint soreness but did not prevent her from working. (AR 354). She indicated that she has problems with bladder control and also has carpal tunnel in her left hand. (AR 355). She also testified that she has chronic fatigue and difficulty with sleep. (AR 356). Plaintiff additionally stated that she has problems with migraine headaches, has experienced periodic depression following the carpal tunnel surgery, and has degenerative arthritis in her lower back. (AR 358, 360).

Plaintiff testified that she could walk three miles three years ago, but could only currently walk three blocks at a time, sit about 20 to 30 minutes at a time and stand for only three to four minutes at a time. (AR 364, 368). Plaintiff stated that carrying a gallon of milk required her to use both arms and that

she could stand and hold her 21 pound grandson if someone were to hand him to her.  (AR 369).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if he is engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c), 416.920(c).

///

///

- 4 -

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past. If Plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy"

which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

///

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## **ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (AR 18).  At step two, the ALJ determined that Plaintiff has the severe impairments of obesity, status post right carpal tunnel repair and degenerative disc disease of the lumbar spine, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 27-28).

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light exertion work. (AR 34).  She found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; could sit, stand or walk 6 hours out of

an 8 hour day with normal breaks; should avoid climbing ropes, ladders and scaffolds, concentrated exposure to hazards and unprotective heights; and is limited to only occasionally climbing stairs and ramps, bending and stooping and no more than frequently handling with her right dominant hand.  (AR 34).

At step four of the sequential evaluation process, the ALJ found that, based on Plaintiff's RFC, she could perform her past relevant work as a hospital admitting clerk, a general clerk, a cashier II, a sales clerk, a collection clerk, and a telephone receptionist as previously performed and as generally performed in the national economy.  (AR 35).  Accordingly, the ALJ determined at step four of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 35-36).

## **ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that:

1.   The ALJ erred by failing to provide proper reasoning for finding her testimony not fully credible; and

2.   Plaintiff is more limited from a physical standpoint than what was determined by the ALJ.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

///

///

///

**DISCUSSION**

**A.  Plaintiff's Credibility**

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for rejecting her symptom testimony. (Ct. Rec. 13, pp. 13-17).  Plaintiff contends that, based on her testimony regarding her complaints and limitations, the ALJ should have determined that she is much more limited from a physical standpoint.  (Ct. Rec. 13, p. 16).  The Commissioner responds that the ALJ gave good reasons for finding Plaintiff not credible. (Ct. Rec. 16, pp. 8-9).  In this case, the ALJ found that the record demonstrated that Plaintiff was less than fully credible regarding her complaints and limitations.  (AR 33).

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ noted that although Plaintiff has received treatment for her impairments, the treatment has been essentially routine and/or conservative in nature.  (AR 30).  Furthermore, the ALJ indicated that Plaintiff's description of limited daily activities

was inconsistent with the record evidence.  It is well-established that the nature of daily activities may be considered when evaluating credibility.  *Fair*, 885 F.2d at 603.  As noted by the ALJ, the record evidence demonstrates that in June of 2000 Plaintiff was able to walk for exercise 30 to 60 minutes a day plus do some gardening.  (AR 23, 280).  An assessment by Dr. Colwell in September of 2000 revealed that Plaintiff was walking two and one-half miles per day, five to six times per week at a moderate pace.  (AR 208).  He opined that Plaintiff would be able to return to work "in the very near future, if not at this time." (AR 207).  Dr. Colwell noted in November of 2000 that Plaintiff's symptoms had diminished, her grip strength was improving and her progression had been good.  (AR 212).  On February 8, 2001, Dr. Colwell noted that, while Plaintiff continued to have episodic hand pain, she was fully capable of performing all her home care and working full time.  (AR 222).  On July 9, 2001, Dr. Gray indicated that Plaintiff had a busy social schedule raising her children and grandchildren, and that medicine had been helping her "real well."  (AR 284).  On May 8, 2002, it was noted that she had a little bit more energy and was "just feeling wonderful."  (AR 289).  On February 5, 2003, Dr. Colwell noted that electromyography ("EMG") studies revealed "an excellent outcome from the carpal tunnel surgery."  (AR 227).  As noted by the ALJ, in the Application to Reopen Claim, Dr. Colwell indicated that Plaintiff's condition does not prevent her from working.  (AR 25, 32, 235).  Therefore, Plaintiff's daily activities and exhibited functional capacity level indicates that Plaintiff functions at a level greater than she alleges.

Plaintiff's self reports are also inconsistent.
Inconsistencies in a disability claimant's testimony supports a
decision by an ALJ that a claimant lacks credibility with respect
to her claim of disabling pain.  42 U.S.C.A. § 423(d)(5)(A),
Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  On February
26, 2003, Plaintiff reported to being able to walk for 30 minutes,
stand for 45 minutes, sit for 40 minutes and work in the yard or
garden for about 30 to 40 minutes at a time.  (AR 97-98).  This
reported activity is inconsistent with the testimony she gave at
the administrative hearing.  She testified that she could only
walk about three blocks at a time, sit about 20 to 30 minutes at a
time and stand for only three to four minutes at a time.  (AR 364,
368).  Plaintiff additionally informed the ALJ at the
administrative hearing that her husband had undergone four
surgeries in the last year and had been unable to do anything.
(AR 372).  Yet, she earlier testified that her husband does most
of the housework.  (AR 362-363).

Plaintiff's testimony regarding her functioning is
additionally inconsistent with the medical reports of record.  On
May 10, 1999, a physical capacities exam revealed that Plaintiff
was able to work at the light-medium physical demand level for an
eight hour day.  (AR 170).  The exam demonstrated Plaintiff's
ability to lift, carry, push and pull eight to 17 pounds
constantly and 18 to 35 pounds frequently.  (AR 172).  An August
23, 1999 independent medical examination conducted by three
experts in the medical field, a neurologist, an orthopedic surgeon
and a rheumatologist, concluded that there were no objective
findings to base limitations or restrictions preventing Plaintiff

from working.[2]  (AR 31, 153-162).  It was noted that the physical
assessment did not concur with Plaintiff's description of her
limitations.  (AR 31, 161).  A June 15, 2000, letter from Alfonso
Oliva, M.D., indicated that his examination of Plaintiff's upper
extremities revealed no evidence of weakness in the biceps,
triceps, or shoulder muscles.  (AR 167).  Dr. Oliva reported that
the extensors of the wrists and digits were tender over the
proximal forearm but he was unable to elicit any true weakness and
rated it a 5/5.  (AR 167).  Following a January 2004 motor vehicle
accident, an exam revealed that Plaintiff had good hand grip
strength bilaterally, rated at a 5/5, and had no neurosensory
deficit in the upper extremities.  (AR 307).  Susan Lehman, D.O.,
noted on March 31, 2005, that Plaintiff had the capacity to
occasionally lift and carry 25 pounds, frequently lift and carry
10 pounds, and was not limited in her upper extremities.  (AR 322-
325).

The May 10, 1999 physical capacities exam also suggested
"very poor effort or voluntary submaximal effort" on Plaintiff's
behalf.  (AR 170).  It was noted that Plaintiff's hand test
validity testing was indicative of "poor effort."  (AR 170).
Although the undersigned agrees that this does not establish that
Plaintiff was malingering, evidence of poor effort on exam is a
relevant factor to Plaintiff's overall credibility.[3]

---

[2]This is consistent with Dr. Colwell's opinion, as noted above, that
Plaintiff's condition does not prevent her from working (AR 235), as well as
the May 10, 1999 physical capacities exam which revealed that Plaintiff was
able to work at the light-medium physical demand level for an eight hour day
(AR 170).

[3]A lack of cooperation or a display of "poor effort" by a claimant
during an examination may be used to illustrate a claimant's tendency to
exaggerate.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

- 12 -

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

The objective evidence, as indicated by the ALJ, shows that Plaintiff has good grip strength bilaterally and no neurosensory deficits in her upper extremities. (AR 34). With the exception of Plaintiff's own subjective complaints and a March 9, 1999 medical report (AR 270),[4] there is no evidence of record indicating that Plaintiff is limited to the extent that she alleges. The weight of the evidence of record reveals that Plaintiff presents herself as more limited than what she really is. After reviewing the record, the undersigned finds that the rationale provided by the ALJ was clear and convincing for a conclusion that Plaintiff's allegations were not fully credible in this case.

**B.  Physical Limitations**

Plaintiff argues that she is more limited from a physical standpoint than as determined by the ALJ in this case. (Ct. Rec. 13, p. 12). Plaintiff argues that there was no substantial

///

---

[4]As noted in Section B below, the ALJ properly rejected Dr. Gray's March 9, 1999 medical report. *See infra.*

evidence to support the decision of the ALJ regarding her RFC. (Ct. Rec. 13, p. 12).

The ALJ concluded that Plaintiff has the physical RFC to perform light exertion work with, among other restrictions, no more than frequent handling with her right dominant hand. (AR 34). In making this determination, the ALJ rejected Dr. Gray's March 9, 1999 opinion that Plaintiff would never be able to use a keyboard again in an occupational status and never be able to do any type of job which involves repetitive use of her right hand or wrist. (AR 33, 270). The Commissioner responds that the ALJ appropriately evaluated the medical evidence of record, and properly rejected Dr. Gray's opinion as unsupported by the weight of the record evidence. (Ct. Rec. 16, pp. 4-10). The undersigned agrees.

The ALJ properly evaluated the evidence of record in this case. (AR 18-34). With regard to Plaintiff's physical capacity, the ALJ discussed a variety of medical reports which consistently found that Plaintiff had good grip strength and no neurosensory deficits in her upper extremities. (AR 18-34, *supra*). Other than Plaintiff's own subjective complaints[5] and Dr. Gray's March 9, 1999 medical report (AR 270), there is no evidence of record indicating that Plaintiff is limited to any greater extent than that which the ALJ determined in this case. *Supra*.

The ALJ rejected Dr. Grays's 1999 opinion and gave valid grounds, supported by the record, for its rejection. A treating physician's opinion is given special weight because of his

---

[5]As noted in Section A above, the ALJ properly found that Plaintiff's allegations regarding her limitations are not totally credible in this case. *See supra*.

familiarity with the claimant and his physical condition.    *Fair v.*
*Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).    However, the
treating physician's opinion is not "necessarily conclusive as to
either a physical condition or the ultimate issue of disability."
*Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations
omitted).    To reject the opinion of a treating or examining
physician the ALJ must have evidence to support the decision such
as laboratory test results, contrary reports from other physicians
of record, or testimony from the claimant that was inconsistent
with the physician's opinion.    *Magallanes*, 881 F.2d at 751-52;
*Andrews,* 53 F.3d 1042-43.    The ALJ indicated that Dr. Gray's
opinion was given no weight because there was a scarcity of
objective findings and limited or no evidence of physical
examinations in his chart notes, he was not a specialist, and his
opinion is contradicted by other medical opinion evidence of
record.    (AR 33).

As noted by the ALJ, and as indicated in Section A above, the
independent medical evaluation, which was performed by specialists
in August of 1999, revealed no objective findings to base
limitations or restrictions preventing Plaintiff from working.
(AR 153-162).    This determination is consistent with Dr. Colwell's
2001 and 2003 opinion that Plaintiff's condition did not prevent
her from working (AR 222, 235) and the May 10, 1999 physical
capacities exam which revealed that Plaintiff was able to work at
the light-medium physical demand level for an eight hour day (AR
170).
///
///

In addition, a June 15, 2000 letter from Dr. Oliva indicated that Plaintiff's upper extremities revealed no evidence of weakness in the biceps, triceps, or shoulder muscles. (AR 167). Dr. Oliva reported that the extensors of the wrists and digits were tender over the proximal forearm but he was unable to elicit any true weakness and rated it a 5/5. (AR 167-168). On May 19, 2003, state agency reviewing physicians found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand, walk and sit about six hours each per day; and was restricted from frequent handling with her right hand. (AR 251-258). The same limitations were assessed by reviewing state agency physicians on December 23, 2003. (AR 299-304). A January 2004 exam revealed that Plaintiff had good hand grip strength bilaterally, rated at a 5/5, and had no neurosensory deficit in the upper extremities. (AR 307). Dr. Lehman noted on March 31, 2005, that Plaintiff had the capacity to occasionally lift and carry 25 pounds, frequently lift and carry 10 pounds, and was not limited in her upper extremities. (AR 322-325).

The Court finds that the ALJ thoroughly analyzed the evidence of record (AR 18-34) and provided specific and legitimate reasons for rejecting Dr. Gray's March 9, 1999 finding. The substantial weight of the record evidence as outlined above supports the ALJ's physical RFC determination that Plaintiff is capable of performing light exertion work with the following restrictions:  should avoid climbing ropes, ladders and scaffolds, concentrated exposure to hazards and unprotective heights, is limited to only occasionally climbing stairs and ramps, bending and stooping and is restricted ///

1  from no more than frequent handling with her right dominant hand.

2  (AR 34).  The ALJ's RFC determination is without error in this

3  case.

4  <u>**CONCLUSION**</u>

5       Having reviewed the record and the ALJ's conclusions, this

6  Court finds that the ALJ's decision that Plaintiff is capable of

7  performing light exertion work, including her past jobs as a

8  hospital admitting clerk, a general clerk, a cashier II, a sales

9  clerk, a collection clerk, and a telephone receptionist, jobs

10 existing in sufficient numbers in the national economy, is

11 supported by substantial evidence and free of legal error.

12 Plaintiff is thus not disabled within the meaning of the Social

13 Security Act.  Accordingly,

14     **IT IS ORDERED**:

15        1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec.**

16 **12**) is **DENIED**.

17        2.   Defendant's Motion for Summary Judgment (**Ct. Rec.**

18 **15**) is **GRANTED**.

19        3.   The District Court Executive is directed to enter

20 judgment in favor of Defendant, file this Order, provide a copy to

21 counsel for Plaintiff and Defendant, and **CLOSE** this file.

22     **DATED** this ___26th___ day of December, 2006.

23

24                               s/Michael W. Leavitt

25                               MICHAEL W. LEAVITT
                     UNITED STATES MAGISTRATE JUDGE

26

27

28